# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **ARNOLD D. CRAFT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:07-00237** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, Arnold D. Craft (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on March 8, 2005, alleging disability as of January 30, 2005, due to diabetes, high blood pressure, bad eye sight, lower back pain, shortness of breath, fatigue, dizziness, and tingling of his hands and feet. (Tr. at 16, 51-53, 64, 67-68.) The claim was denied initially and upon reconsideration. (Tr. at 37-39, 45-47, 262-65, 268-71.) On January 6, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 48.) The hearing was held on November 16, 2006, before the Honorable Richard N. Owen. (Tr. at 276-314.) By decision dated December 4, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-27.) The ALJ's

decision became the final decision of the Commissioner on March 2, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On April 16, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

2

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from severe impairments.[1] (Tr. at 19, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for a wide range of unskilled work at the medium level of exertion as follows:

> The claimant has visual loss in the left eye, but has adequate vision in his right eye to perform basic work tasks. He can lift/carry fifty pounds occasionally and twenty-five pounds frequently, can stand/walk about six hours in an eight hour workday, and can sit about six hours in an eight hour workday. He should avoid concentrated exposure to vibration and irritants such as fumes, odors, dusts, gases, etc. No other significant postural, manipulative, visual, communicative, or environmental limitations are found to exist.

(Tr. at 23, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

---

[1] At step two of the sequential analysis, the ALJ did not identify the specific severe impairments. (Tr. at 19-21.) However, at step three of the sequential analysis, the ALJ noted that he considered Claimant's musculoskeletal, visual, and respiratory problems, as well as his diabetes mellitus and obesity under the Regulations. Thus, the ALJ must have considered these impairments as severe.

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a cafeteria attendant, cleaner, and hand packer, at the unskilled, light level of exertion. (Tr. at 26, Finding No. 5.) On this basis, benefits were denied. (Tr. at 27, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 24, 1951, and was 55 years old at the time of the administrative hearing, November 16, 2006. (Tr. at 25, 51, 282, 307.) Claimant had a ninth grade, or limited education. (Tr. at 26, 283.) In the past, he worked as a truck driver and a tire changer. (Tr. at 25, 68, 78-84, 284-87, 308.)

4

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant's allegations regarding his symptoms and limitations were not credible in their entirety. (Document No. 12 at 13-15.) Specifically, Claimant contends that the ALJ erred in noting certain discrepancies between Claimant's testimony and written reports, which were prepared by Claimant with assistance from others. (Id.) In particular, Claimant asserts that it was error for the ALJ to note discrepancies in Claimant's reported education, his ability to drive, his use of oxygen, and his physicians' referral to a specialist. (Id. at 14-15.) Claimant asserts that the ALJ misstated several important factors in these regards, and therefore, his finding is not supported by substantial evidence. (Id. at 15.)

The Commissioner asserts that Claimant does not argue that the evidence precludes performance of a limited range of medium work. (Document No. 15 at 10.) Rather, the Commissioner asserts that Claimant alleges that his medical impairments support the limitations to which he testified. (Id.) Consequently, Claimant's argument is without merit according to the Commissioner because "it is well-settled that an impairment, or combination of impairments, alone will not establish disabling limitations." (Id.) The Commissioner contends that the ALJ's pain and credibility assessment was made in accordance with the Regulations and Fourth Circuit precedent, and therefore, the Court should defer to the ALJ's finding. (Id. at 11.) The Commissioner notes that the ALJ devoted two full paragraphs to demonstrating how Claimant's allegations were not related

to the limited objective findings of record. (Id. at 12.) Rather than setting forth evidence to support his burden, the Commissioner asserts that Claimant instead had cited isolated complaints regarding certain examples cited by the ALJ. (Id.) To this end, the Commissioner asserts that the ALJ properly considered the discrepancies between Claimant's testimony and his prior representations, and gave some weight to Claimant's allegations. (Id.) The ALJ credited Claimant's testimony regarding his allegation that he was precluded from performing his past relevant work, and included in the hypothetical questions presented to the VE, limitations in addition to those limitations assessed in his RFC. (Id. at 12-13.) The Commissioner thus contends that the ALJ's pain and credibility assessment complied with the controlling Regulations and Fourth Circuit precedent, and therefore, was supported by substantial evidence. (Id. at 13-14.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because he erred in substituting his opinion for that of Claimant's evaluating and treating physicians, Dr. Z. Shamma, M.D. and George Bryant, P.A.. (Document No. 12 at 16-19.) The Commissioner asserts that the ALJ properly considered the medical opinion evidence of George Bryant and Dr. Shamma, and concluded that the state agency medical consultant opinions were entitled more weight because their opinions contained specific functional limitations that were considered with the record. (Document No. 15 at 14.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not posing a proper and complete hypothetical question to the VE that included all of Claimant's impairments. (Document No. 12 at 16-19.) Specifically, Claimant contends that the ALJ failed to include any limitations regarding his limited ability to stand and walk due to his diabetic neuropathy. (Id. at 17.) Claimant asserts that his severe medical impairments

> of severe obstructive lung disease, diabetes mellitus with neuropathy, severe vision impairments and multi level degenerative disc disease would prevent him from performing medium or light work. With a sedentary level of impairment, the claimant would meet the Listing of Impairment's at 201.10. The Administrative Law Judge clearly disregarded the medical evidence and substituted his opinion for that of the medical experts treating the claimant.

(Id. at 19.)

The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 15 at 14-20.)

1. Pain and Credibility.

Claimant alleges that the ALJ erred in finding that Claimant's allegations regarding his symptoms and limitations were not credible in their entirety. (Document No. 12 at 13-15.) The Commissioner asserts that Claimant's argument is without merit and that the ALJ's decision is supported by substantial evidence. (Document No. 15 at 10-14.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.

7

Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (i) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

> SSR 96-7p repeats the two-step regulatory provisions:
>
>> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the

impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply

because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 23-25.) The ALJ found, at the first step of the analysis, that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 23.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 23-25.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 23.)

The ALJ summarized Claimant's testimony in his decision, noting that Claimant stated that he experienced back pain due to arthritis, swelling in his feet and legs, stomach pain when lifting, blindness in his left eye, high blood sugar levels, and hypertension. (Tr. at 23, 287-93.) The ALJ noted Claimant's testimony that he experienced breathing problems, which required medications and the continuous use of oxygen. (Tr. at 23, 294-97.) The ALJ thus noted the nature and location of Claimant's pain and other problems, but noted that despite his breathing problems, Claimant continued to smoke cigarettes. (Tr. at 23, 300-01.) Regarding his functional abilities, the ALJ noted Claimant's testimony that he could sit only ten minutes before having to change positions and walk

only about thirty feet. (Tr. at 23, 295-96.) He noted that Claimant went to school up to the tenth grade, and was able to read and write. (Tr. at 23, 283.) In addition to the breathing treatment, the ALJ noted that Claimant's hypertension, diabetes, and hyperlipidemia were controlled with medications; that he underwent diabetic foot care approximately every eight weeks; was prescribed pain analgesics, muscle relaxants, and anti-inflammatory drugs for complaints of back and shoulder pain; was prescribed Nicoderm patches for smoking cessation; and that he was undergoing treatment for his eye problems, including examination by a specialist. (Tr. at 19-21.)

The ALJ also summarized Claimant's testimony regarding his activities of daily living. (Tr. at 23, 297-99.) Claimant testified that he watched television, attended medical appointments, and occasionally did the dishes. (Tr. at 23, 298-99.) The ALJ noted that Claimant's testimony in these respects was corroborated by the testimony of Claimant's witness. (Tr. at 23, 303-08.) Despite Claimant's limited testimony of activities of daily living, the ALJ noted that Claimant reported in a form Function Report, dated March 27, 2005, that he took short walks, prepared simple meals, drove an automobile, shopped for groceries and other items, watched television, was able to handle financial matters, managed a checking account, and tended to his personal needs with the exception of tying his shoes, without assistance. (Tr. at 24, 85-94.) Claimant also reported the limitations to which he testified. (Tr. at 24, 90-93.) The ALJ further summarized the medical evidence of record. (Tr. at 24, 19-21.)

In considering Claimant's allegations, the ALJ noted some discrepancies between his testimony and the other evidence of record. (Tr. at 23-24.) Particularly, the ALJ noted that Claimant testified that he quit school while in the tenth grade, but reported in a form Disability Report that he completed the eleventh grade in school and did not attend special education classes. (Tr. at 23,

71.) Claimant contends that it was error for the ALJ to consider these statements regarding his education as a reflection on his credibility because he received assistance in completing the documents provided to him from the Social Security Administration due to his limited writing ability. (Document N. 12 at 14.) The ALJ however, acknowledged that Claimant had a limited education, though he testified that he was able to read and write, with some difficulty in comprehending the meaning of certain words. (Tr. at 26.) To this extent the ALJ limited Claimant to performing unskilled work, which accommodated his limited education. (Tr. at 23, 26-27.) The Court thus finds that the ALJ did not err in noting this discrepancy.

As discussed above, the ALJ noted in his decision that Claimant "drives an automobile." (Tr. at 24.) Claimant takes issue with this statement because he specifically testified that he did not drive at all. (Document No. 12 at 14.) Despite Claimant's testimony however, he reported on a form Disability Report that he drove a car. (Tr. at 88.) To the extent that the ALJ misstated Claimant's testimony however, the Court finds that any such error was harmless. The ALJ considered all the evidence of record, including Claimant's testimony, in assessing Claimant's pain and credibility. The ALJ mentioned that Claimant could drive only on two instances in his decision, and did not give this ability, or lack thereof, any special focus. (Tr. at 23-24.)

The ALJ further pointed out that despite Claimant's allegations that he needed constant oxygen, he otherwise did not reported the need for oxygen. (Tr. at 24.) Claimant asserts that the ALJ erred in making such statement because he had been prescribed oxygen only at a recent evaluation by Dr. Shamma on September 11, 2006. (Document No. 12 at 14-15.) Claimant overlooks the ALJ's statements regarding the use of oxygen. The ALJ noted that on August 8, 2006, Dr. Shamma noted that Claimant had "oxygen at home with BIPAP so he is going to use it in the day about two liters

nasal cannula with any exertion." (Tr. at 24, 229.) On his return visit to Dr. Shamma on September 11, 2006, Claimant reported that he used the oxygen only at night. (Id.) Dr. Shamma therefore, prescribed liquid oxygen using O2 saturation for his continuous use. (Id.) Claimant's failure to use the oxygen available to him with BIPAP during the day on exertion, prior to the prescription for liquid oxygen, was but a factor the ALJ considered in assessing Claimant's allegation that he required constant oxygen. The Court finds no error in the ALJ's statements.

Finally, Claimant alleges that the ALJ erred in noting that Claimant neither continued to experience edema or problems with ambulating, nor was examined by specialists for his breathing problems and neuropathy. (Document No. 12 at 15.) In assessing Claimant's pain and credibility, the ALJ noted that Claimant essentially was treated conservatively with prescription medications, and that he did not use prescribed pain analgesics on a regular basis; receive injections, nerve blocks, or therapy; require hospitalizations during the relevant period of time; or undergo surgeries except for cataract and hernia surgeries. (Tr. at 24.) Despite having alleged stomach problems, the ALJ noted that the record reflected only the use of antacids and no treatment. (Id.) Contrary to Claimant's alleged visual limitations, the ALJ noted that Claimant was capable of tending to his own personal needs, including dressing and shaving without assistance, watched television, handled financial matters, and shopped. (Id.) The ALJ further noted that the objective evidence failed to demonstrate significant abnormalities of the spine, abdomen, extremities, or lungs; persistent edema; or significant respiratory problems unresponsive to prescribed medications. (Id.) Regarding Claimant's edema, the ALJ specifically noted that he experienced only trace or no edema on repeated physical examinations. (Id.) The ALJ acknowledged in his summary of the medical evidence that Claimant presented to Dr. Mrozek on May 23, 2006, with pitting edema in the bilateral ankles and exhibited

13

difficulty in walking. (Tr. at 19, 233.) Dr. Mrozek's treatment notes do not otherwise reflect any findings of edema. Furthermore, Dr. Worthington, Claimant's treating physician, noted that Claimant did not check his blood sugar levels on a regular basis. (Tr. at 162, 167, 171.) Nevertheless, in considering the totality of the evidence, the ALJ concluded that Claimant's examinations did not reveal edema on a continuing basis. Accordingly, the Court finds no error in the ALJ's statement regarding Claimant's edema.

The ALJ further noted in his pain and credibility assessment that Claimant at times was noncompliant with recommended treatment. (Tr. at 24.) In particular, the ALJ noted that Claimant failed to follow through on sleep studies as directed by his physicians and continued to smoke cigarettes against his physicians' recommendations and despite his allegations of shortness of breath. (Id.) Finally, the ALJ noted that Claimant's treating physicians did not refer him "for evaluation by a specialist in endocrinology, orthopedics, neurology, pulmonology, or pain managements, as would be expected if his symptoms were significant or had not responded adequately to treatment." (Id.) Claimant asserts that this statement was made in error because he received medical treatment from specialists including Dr. Shamma, a pulmonary specialist; Dr. Mrozek, a specialist concerning neuropathy and difficulties with feet due to diabetes; and Dr. Ryan a medical doctor specializing the eye care. (Document No. 12 at 15.) The ALJ acknowledged that Claimant received treatment from Dr. Ryan, a specialist of eye care. (Tr. at 19-21.) He further acknowledged the treatment by Dr. Shamma and Dr. Mrozek, but did not refer to them as specialists in their fields. (Id.) Though Dr. Mrozek may be a foot specialist, as the Commissioner notes, Claimant did not see him until three months post-application for disability on referral by Dr. Worthington. (Tr. at 130.) The record reflects that Dr. Mrozek examined Claimant for diabetic foot care approximately every eight weeks

14

for one year. (Tr. at 129-30, 213-15, 231-34.) Dr. Mrozek's exams primarily consisted of debridement of his ingrown nails and prescribing medications for his dry skin. (Id.) Dr. Mrozek prescribed diabetic shoes, which Claimant reported felt good, and on May 23, 2006, Dr. Mrozek recommended new shoes. (Tr. at 214.) As of January 17, 2006, Dr. Mrozek's treatment notes did not reflect that Claimant had obtained the recommended shoes. (Tr. at 215.)

As discussed above, the ALJ acknowledged Dr. Shamma's treatment of Claimant. (Tr. at 19-21.) However, as Claimant points out, the ALJ did not refer to Dr. Shamma as a pulmonary specialist. Nor did the ALJ refer to Dr. Mrozek as a specialist. Nevertheless, the Court finds that the ALJ adequately reviewed and summarized Dr. Shamma's and Dr. Mrozek's treatment notes and considered their findings and recommendations in his decision. Accordingly, any error that the ALJ may have committed in failing to acknowledge these physicians as "specialists" is harmless.

2. Opinion Evidence.

Claimant next alleges that the ALJ erred by substituting his opinion for that of Claimant's treating and evaluating physicians. (Document No. 12 at 12-19.) The Commissioner asserts that Claimant's argument is without merit and that the ALJ's decision is supported by substantial evidence. (Document No. 15 at 14-20.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment,

15

duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2));

16

rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2004). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the

17

factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2004). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

18

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

A. *Dr. Shamma.*

Claimant first alleges that the ALJ erred in not accepting any limitations regarding Claimant's moderately severe obstructive lung disease because Dr. Shamma failed to state any specific limitations other than that the disease would limit his exertional activities. (Document No. 12 at 16-17.) The Commissioner asserts that Claimant's argument "is a misrepresentation of the

19

findings when compared to the record as a whole, of the legal standard used in weighing opinion evidence, and most importantly, of the ALJ's assessment of limitations included in [Claimant's] residual functional capacity (RFC)." (Document No. 15 at 15.)

As the ALJ noted, on May 12, 2005, Dr. Z. Shamma, M.D., opined on consultative examination, that Claimant had moderately severe obstructive lung disease and that his symptoms of chronic bronchitis and chronic obstructive pulmonary disease ("COPD") limited his ability to do any exertional activities. (Tr. at 19, 25, 112.) On physical exam, Dr. Shamma noted Claimant's history of cough and shortness of breath with mild effort. (Tr. at 110.) The ALJ determined that Dr. Shamma's opinion lacked specificity and that "no specific limitations in lifting/carrying, sitting, or standing/walking were reported." (Tr. at 25.)

As the Commissioner notes, the medical evidence demonstrates that Claimant was diagnosed with bronchitis as early as April 2, 2002 (Tr. at 178.), without significant worsening of his functional limitations. (Document No. 15 at 16.) Claimant testified that he continued to work as a truck driver through January, 2005. (Tr. at 287.) He further testified that as of January 31, 2005, Claimant's alleged onset date, he was no longer able to physically get in and out of the truck or see properly. (Tr. at 287.) The medical evidence reveals that from March 31, 2004, through September 3, 2004, Dr. Joan Worthington, D.O., Claimant's treating physician, noted off and on expiratory wheezing in all lungs fields, particularly with cough. (Tr. at 167, 171-72.) On December 17, 2004, March 1, 2005, and June 1, 2005, Dr. Worthington noted that Claimant's lungs were clear to auscultation without wheezes, rales, or ronchi, and that his breath sounds were symmetrical with good air entry. (Tr. at 162-64.) Three months later on September 1, 2005, Dr. Worthington noted mild expiratory coarseness with forced expiration. (Tr. at 159.) On November 28, 2005, and December 13, 2005,

it was noted that Claimant's respiratory system was normal. (Tr. at 156-58.) Despite diagnoses of sinusitis and bronchitis, Dr. Worthington prescribed antibiotics to which Claimant apparently responded well.

On January 13, 2006, Claimant reported shortness of breath. (Tr. at 195.) On exam however, Christina McCracken, Physician's Assistant at Greenbrier Physicians, noted that his lungs were clear to auscultation in all lung fields. (Id.) Dr. Shamma noted on April 13, 2006, that Claimant had morning cough with sputum production, and noted that he continued to smoke one pack of cigarettes every two to three days. (Tr. at 192.) On exam, Dr. Shamma noted decreased breath sounds bilaterally with bronchospasm and wheezing. (Id.) On May 1, 2006, Dr. Shamma acknowledged Claimant's reports that he was feeling better and on exam that chest auscultation revealed decreased breath sounds. (Tr. at 191.) Dr. Shamma recommended on August 8, 2006, that Claimant use his oxygen from the BIPAP during the day on exertion. (Tr. at 229.) However, as discussed above, on September 1, 2006, Claimant reported that he used the oxygen only at night. (Id.) Dr. Shamma therefore prescribed liquid oxygen to be used around the clock. (Id.)

On September 22, 2006, Rachel Miller, Physician's Assistant at the Rainelle Medical Center noted Claimant's reports of difficulty breathing on exertion and lying down, on occasion. (Tr. at 220.) On exam, Claimant exhibited normal breath sounds. (Tr. at 221.) On October 11, 2006, Claimant reported shortness of breath, and Ms. Miller noted expiratory and inspiratory wheezing in both lung fields. (Tr. at 218.)

Based on the foregoing, the Court finds that Claimant did not demonstrate that his breathing problems worsened since he stopped working in January, 2005, and that he consistently reported shortness of breath, and exhibited occasional wheezing, which was controlled with limited treatment

despite his continued smoking. As the ALJ noted, Claimant reported improvement within a short period of treatment, and did not require frequent treatment or hospitalizations due to his respiratory problems. (Tr. at 22.) In view of Claimant's breathing impairments, the ALJ reduced Claimant's RFC to medium level work and restricted him from concentrated exposure to fumes, odors, dusts, and gases. Accordingly, contrary to Claimant's allegations, the ALJ considered Claimant's limitations due to his breathing impairments and accepted Dr. Shamma's opinion to the extent that it was consistent with the performance of medium level work.

   B. _Dr. Mrozek and Hypothetical Questions_.

   Claimant next alleges that the ALJ erred in not accepting any limitations resulting from his diabetic neuropathy. (Document No. 12 at 17.) Claimant asserts that the ALJ rejected Dr. Mrozek's findings on June 22, 2005, of leg swelling, difficulty breathing, and pitting edema in the bilateral ankles. (Id.) Claimant further contends that the ALJ committed reversible error when he presented hypothetical questions to the VE without including any limitations regarding his ability to stand and walk due to his diabetic neuropathy. (Id.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 15 at 17-20.)

   As discussed above, the ALJ noted in his decision Claimant's treatment with Dr. Mrozek. (Tr. at 19-21.) Specifically, he noted that Claimant began treatment with Dr. Mrozek on June 22, 2005, for debridement of his toenails. (Tr. at 19, 130.) Examination on that date revealed a slight decrease in vibratory sensation and a maceration in the fourth web space. (Id.) Dr. Mrozek prescribed an antibacterial gel and recommended that Claimant wear diabetic tennis shoes. (Id.) The ALJ noted Claimant's follow-up examinations on August 24, 2005, and October 11, 2006, which

yielded similar results and the ability to ambulate without difficulty. (Tr. at 19, 130, 215.) The ALJ further noted that on May 23, 2006, however, that Claimant reported some leg swelling and difficulty ambulating. (Tr. at 19, 214.) Dr. Mrozek observed pitting edema in his bilateral ankles and noted that he had difficulty ambulating due to pain in his feet and legs secondary to swelling. (Id.) On August 2, 2006, and October 11, 2006, Claimant's most recent visit, there was no indication of edema or difficulty ambulating. (Tr. at 19, 232.)

In determining whether Claimant's impairments met or equaled a listing level impairment at step three of the sequential analysis, the ALJ noted that there was "no electromyographic evidence of neuropathy or evidence of treatment due to neuropathy; and other than some slight vibratory decrease in the feet, repeated physical examinations have failed to reveal decreased sensation or strength in the upper or lower extremities." (Tr. at 23.) At steps four and five of the sequential analysis, the ALJ further noted that "treatment records do not reflect findings of persistent edema as alleged or significantly decreased strength, sensation, or range of motion of any extremity. . . Only trace edema was reported on repeated physical examinations by the primary care physician." (Tr. at 24.) The ALJ acknowledged Claimant's testimony that he could walk only about thirty feet. (Tr. at 23.) The ALJ however, determined that the evidence of record did not support such a significant limitation in walking or standing based on Claimant's alleged neuropathy. As discussed above, the medical evidence did not demonstrate persistent edema of the lower extremities which would have interfered with Claimant's ability to walk or stand on a continuing basis. Accordingly, the Court finds that contrary to Claimant's allegation, the ALJ considered Dr. Mrozek's limited findings of edema and difficulty ambulating, but determined that the totality of the evidence of record did not support any limitations from his alleged diabetic neuropathy.

The Court further finds that contrary to Claimant's allegations, the ALJ included in his third hypothetical question, Claimant's alleged limitations in standing and walking. Nevertheless, the ALJ was not required to accept Claimant's allegations that were not entirely consistent with the evidence of record.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 308-12.) The ALJ first asked whether a person of Claimant's age, education, past relevant work experience, who was limited to performing work at the medium level of exertion and required an avoidance of concentrated exposure to vibration, fumes, odors, gases, and poor ventilation, as contained in Exhibit 5F, could perform any work. (Tr. at 308.) In response to the ALJ's hypothetical, the VE responded that such person could perform unskilled light jobs such as a driver, assembler, and cafeteria attendant. (Tr. at 310.) The ALJ then asked whether

any of the jobs identified would be altered with the inclusion of visual limitations to include blindness of the left eye and uncorrected visual acuity of 20/40 in the right eye. (Id.) The VE responded that such limitations would exclude the driving and assembler jobs, but would permit the performance of the cafeteria attendant job, as well as the additional jobs of general cleaner and hand packer. (Tr. at 311.) The ALJ further asked whether any of the jobs identified would be altered if he accepted Claimant's testimony as fully credible, to include frequent resting, shortness of breath on minimal exertion, visual impairments, and reading difficulty. (Tr. at 312.) The VE responded that such limitations would preclude all work. (Id.) Finally, Claimant's attorney asked whether an individual who was limited to lifting less than ten pounds due to severe pulmonary impairments and who was unable to stand or walk six hours in an eight-hour workday, was capable of performing any work. (Tr. at 312.) The VE responded that such limitations would severely limit the light range of employment. (Tr. at 313.)

Based on the foregoing, the Court finds that the ALJ presented a hypothetical question to the VE that contained Claimant's limitations in walking or standing due to leg swelling, pitting edema of the bilateral ankles, and breathing problems. As discussed above, the ALJ properly discounted Claimant's allegations regarding his breathing problems and diabetic neuropathy, and therefore, was not required to accept the VE's testimony that Claimant was precluded from performing any work with these limitations. Accordingly, the Court finds that the ALJ's hypothetical questions to the VE were proper and in accordance with the applicable law and Regulations. The ALJ's decision is supported by substantial evidence.

C. *George Bryant, Physician's Assistant*.

Finally, Claimant alleges that the ALJ erred in failing to accord significant weight to the opinion of George Bryant, Physician's Assistant. (Document No. 12 at 17-18.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Document No. 15 at 17-20.)

The medical evidence demonstrates that on November 10, 2006, George Bryant, PA-C, opined that due to Claimant's multiple conditions, including labile hypertension, hyperlipidemia, non-insulin dependent diabetes mellitus, sleep apnea, and lower back pain with degeneration throughout the lumbar spine, together with the progression of his lower back symptomology, "it is likely that [Claimant] is unable to maintain employment." (Tr. at 23-24, 258.) Mr. Bryant noted that as a result of his diabetes mellitus, Claimant exhibited signs of neuropathy in the upper extremities and neuritis in the lower extremities, decreased tactile sensation producing grip strength. (Id.) He further noted that Claimant's hypertension resulted in changes that frequently caused debilitating headaches and chest pain or pressure. (Id.) He further speculated that based on his physical examination, Claimant "suffers from herniated discs in the lower back as well as significant arthritis of the lumbar spine." (Id.)

The ALJ accorded no significant weight to Mr. Bryant's opinions because the opinions lacked "specificity regarding functional limitations and lacks consistency and support with the other evidence of record, including the physician assistant's own treatment records, which do not reflect findings of significantly decreased strength, sensation, or range of motion of any extremity." (Tr. at 25.) The ALJ further noted that Mr. Bryant's opinion that Claimant was unable to maintain employment was an issue reserved to the Commissioner. (Tr. at 24-25.)

Dr. Bryant's opinion appears to have been premised on Claimant's neuropathy of the upper extremities and neuritis of the lower extremities, as well as on Claimant's hypertension, and arthritis of the lumbar spine. The undersigned has determined above that the severity of Claimant's allegations of diabetic neuropathy and breathing problems was not supported by the substantial evidence of record. The evidence demonstrates that Claimant's hypertension largely was controlled by medications and that his arthritis was treated with medications. (Tr. at 19.) Lumbar spine x-rays revealed degenerative changes at L2 through L5 with narrowing in disc spaces, but no fracture or spondylolisthesis. (Tr. at 20, 198.) Claimant reported back pain on December 29, 2005, and exhibited some decreased lumbar range of motion. (Tr. at 20, 174.) Claimant again reported back pain on October 11, 2006. (Tr. at 20-21, 217.) Claimant reported that he had experienced intermittent dull aching and stabbing pain his lower back for three days, without radiation. (Id.) He stated that the pain was aggravated by exertion and relieved by rest. (Id.) On exam, Claimant presented with some limitation of lumbar motion and was prescribed Flexeril and Darvocet. (Tr. at 20-21, 218-19.) X-rays of Claimant's lumbar spine on October 11, 2006, revealed only degenerative changes, degenerative disc disease, osteopenia, and scoliosis. (Tr. at 20-21, 227.)

The medical evidence does not contain any later reports regarding Claimant's back impairment. As stated above, the ALJ considered Mr. Bryant's opinions but did not accord them significant weight. (Tr. at 24-25.) The ALJ noted that neither Mr. Bryant's nor the other evidence of record reflected any findings of "significant decreased strength, sensation, or range of motion of any extremity . . . The claimant was found to have . . . full range of motion and 5/5 strength in the bilateral upper and lower extremities on consultative examination." (Tr. at 25.) Though Mr. Bryant opined that Claimant had herniated discs and significant arthritis, his opinion was speculation on his

part and not supported by the objective medical findings. Accordingly, given the limited evidence regarding Claimant's back impairment, and the absence of significant objective findings or any specific functional limitations resulting therefrom, the Court finds that the ALJ accorded Mr. Bryant's opinion less than significant weight. The ALJ accorded appropriate weight to the opinion evidence of record as it was supported by the evidence. The ALJ's decision therefore, is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 25, 2008.

R. Clarke VanDervort
United States Magistrate Judge